Alexandria Drake (WA 45188)
adrake@singletonschreiber.com
SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Ste. 200
Seattle, WA 98104
Tel. (206) 466-0809

Meagan Verschueren (CA 313117) *Pro Hac Vice applicant*
mverschueren@singletonschreiber.com
Katie Llamas (CA 303983) *Pro Hac Vice applicant*
kllamas@singletonschreiber.com
Alexia Palacios-Peters (CA 263576) *Pro Hac Vice applicant*
apeters@singletonschreiber.com
SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Tel. (619) 771-3473

Attorneys for Plaintiff JANE DOE

**UNITED STATES DISTRICT COURT,**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JANE DOE, an individual,<br><br>Plaintiff,<br>v.<br><br>G6 Hospitality, LLC; G6 Hospitality Property, LLC; G6 Hospitality Purchasing, LLC; G6 Hospitality Franchising, LLC; Motel 6 Operating, LP; SeaTac Hotels, LLC; Jarnail Singh, an individual; and ROES 1 through 50,<br><br>Defendants. | Case No.:<br><br>Unlimited Jurisdiction<br><br>**COMPLAINT FOR DAMAGES AND INJURIES**<br><br>**JURY TRIAL DEMANDED**<br><br>**Damages in excess of $1,000,000** |

## COMPLAINT

COMES NOW the Plaintiff JANE DOE, by and through the undersigned counsel, and respectfully submit this Complaint for damages and makes the following averments.

## INTRODUCTION

1. Jane Doe brings this action to hold Defendants accountable for facilitating and knowingly profiting from the trafficking of Jane Doe for sex when she was a minor, which caused serious and permanent injuries to Jane Doe. Plaintiff demands justice and compensation for the profound harms and losses Jane Doe endured at Defendants' properties in 2014 when she was just sixteen (16) and seventeen (17) years old.

2. Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, et seq. has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

3. In 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who while not criminally liable under the TVPRA, financially benefit from participation in a venture that they know or should have known engaged in criminal sex trafficking.

4. For years, sex trafficking ventures have brazenly operated in and out of hotels throughout the United States and especially at Motel 6 and Studio 6 locations.

5. Major hotel brands, including Defendants, have made public claims about combating human trafficking, while at the same time expanding their economy hotels where sex trafficking is most prevalent and profiting from crimes that are perpetrated on their properties and from providing harbor for the underlying



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

assaults. Time after time, Motel 6 has scouted and chosen properties on and near "blades" and other areas specifically known for prostitution, crime and sex trafficking.

6. The hotel and hospitality industry continue to create and expand the environment for traffickers to harbor victims and neglect taking reasonable steps to prevent such criminal misconduct, instead choosing to earn a profit at the expense of human life, human rights, and human dignity.

7. Appearances and sponsorships do not excuse companies, corporations and individuals that have financially benefited from sex trafficking, including G6 entities and Motel 6 companies. In fact, it reveals corporate knowledge of the use of their properties as hubs for human trafficking. The hotel industry has provided the means, environment, and support for the human trafficking industry to become the second largest profitable criminal activity in the United States.[1] They speak about ending it, but their actions intentionally promote it as they knowingly continue to profit from it every single day.

8. As the trafficking industry grows, so have Defendants and their profits through the expansion of their properties and rooms rented for this explicit and apparent purpose.

9. At some locations, Motel 6 past live-in managers estimate that up to 90% of their business and profits were directly tied to trafficking. Managers and past employees allege the sex trafficking was reported up the chain to "corporate" (G6 Defendants) and they were encouraged to look the other way. Corporate did nothing to prevent or stop it.

///

///

[1] Human trafficking is now the SECOND MOST PROFITABLE CRIMINAL ACTIVITY in the United States! - Monique Burr Foundation



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

10. Seattle law enforcement has indicated Motel 6 refused to implement changes they suggested to prevent and/or stop the crime. Even when the Motel 6 located at 18900 47th Ave S., SeaTac, Washington did hire security, law enforcement confirms the security seemed to protect the criminals and/or crime versus prevent it.

11. Past security guards at the 47th Avenue Motel 6 location confirm they were instructed not to call the police at times.

12. Jane Doe endured sex trafficking in motels owned, operated, maintained, and controlled by Defendants, their agents and staff.

13. Jane Doe was subjected to unimaginable atrocities including but not limited to repeated daily rape, verbal and physical attacks, humiliation, fear, and psychological manipulation and degradation, which ultimately led to severe psychological trauma and physical injuries.

14. Defendants continued supporting traffickers, including Jane Doe's trafficker, despite evident and apparent signs of ongoing sex trafficking, and of Jane Doe being trafficked for sex as a child, at its motels and specifically the following Motel 6 locations:

a. Motel 6, 16500 Pacific Hwy, Seatac, WA 98188;

b. Motel 6, 18900 47th Ave. S., Seatac, WA 98188.

15. The Defendants benefited financially by allowing their Motel 6 managers and employees to facilitate and take actions to support the trafficking of Jane Doe in exchange for money. Defendants strategically provided venues where traffickers could exploit victims like Jane Doe with minimal risk of detection and interruption so that Defendants could continue to profit from regular room rentals. As a result of sex trafficking, Defendants thrived. To them, it's was and is a well-thought-out business decision. To Jane Doe, it was and is a nightmare that haunts



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

her every single day. Defendants participated and profited from the destruction of Jane Doe's life.

**PARTIES**

16. Jane Doe is a natural person who is currently a resident and citizen of Washington. Jane Doe is a survivor of sex trafficking. From approximately early March 2014 to December 2014, she was harbored and forced to engage in commercial sex acts for the benefit of her trafficker and Defendants while she was a minor.

a. Due to the sensitive, private, and potentially retaliatory nature of these allegations, this Complaint identifies Jane Doe by a pseudonym only. Jane Doe will move the Court to proceed under a pseudonym in all filings, all public Court proceedings, and to limit the disclosure of information about Jane Doe's true identity to protect Jane Doe and Jane Doe's identity.

b. Generally, pleadings must state the name of all parties.[2] However, there are exceptions when the issues involved may result in retaliation or harm to the plaintiff.[3] For good cause, the Court may issue an order to protect a party or person from undue harms and burdens. Exceptions also exist for cases that involve intimate and detailed facts of a sexual and personal nature to prevent public ridicule, embarrassment and her right to privacy in the intimate details of her body and sexual harms while a minor and young adult.

///

[2] Fed. R. Civ. P. 10(a).

[3] See Cases e.g., *Doe v. Penzato*, 2011 U.S. Dist. LEXIS 51681, *6-9 (N.D. Cal. May 13, 2011); *Roe v. St. Louis Univ.*, 2009 U.S. Dist. LEXIS 27716, *13, (E.D. Mo. Apr. 2, 2009)



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

c. To maintain her privacy and safety, Jane Doe should not be compelled to disclose her identity publicly. Jane Doe's privacy interest substantially outweighs the customary practice of judicial openness.[4] Jane Doe's life could be put in grave danger should her trafficker or his associates learn information about her through publicly filed documents in this action and if they discover she has spoken about the trafficking.

d. Defendants will not be prejudiced. Jane Doe will agree to reveal her identity to Defendants for the limited purpose of investigating Jane Doe's claims once the parties have entered into a protective order.

e. Jane Doe simply seeks redaction of her personally identifying information from the public docket and assurances that Defendants will not use or publish Jane Doe's identity in a manner that will compromise her personal life, future safety, family's safety, or employment prospects, as well as her rights to privacy after being a victim of multiple sex abuses, physical violence, and sexual assaults.

17. Defendant SeaTac Hotels, LLC is a for-profit Washington company with its principal place of business in SeaTac, Washington. At all times relevant, SeaTac Hotels, LLC owned and operated the Motel 6 located at 18900 47th Avenue South, SeaTac, Washington.

18. Defendant Jarnail Singh, an individual, directly operated, controlled the Motel 6 located at 18900 47th Avenue South, SeaTac, Washington, and participated in the sex trafficking venture there that he knew or should have known

[4] See case *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (internal citation and quotations omitted).



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

was engaged in the sex trafficking of Plaintiff and other child victims. Upon information and belief, Defendant Jarnail Singh is a resident of Snohomish County in the State of Washington.

19. Defendant G6 Hospitality, LLC is a for-profit Delaware company with its principal place of business in Carrollton, Texas.

20. Defendant G6 Hospitality Property, LLC is a for-profit Delaware company with its principal place of business in Carrollton, Texas.

21. Defendant G6 Hospitality Purchasing, LLC is a for-profit Delaware company with its principal place of business in Carrollton, Texas.

22. Defendant G6 Hospitality Franchising, LLC., is a for-profit Delaware company with its principal place of business in Carrollton, Texas.

23. Defendant Motel 6 Operating, LP. is a for-profit Delaware company with its principal place of business in Carrollton, Texas.

24. Defendants G6 Hospitality, LLC; G6 Hospitality Property, LLC; G6 Hospitality Purchasing, LLC; G6 Hospitality Franchising, LLC; Motel 6 Operating, LP, will collectively be referred to as "G6 Defendants."

25. G6 Defendants are registered to do business in the State of Washington and may be served at Cogency Global Inc., 1780 Barnes Blvd. SW, Tumwater, Washington 98512.

26. G6 Defendants and its brand Motel 6® properties include the locations at 16500 Pacific Highway South, SeaTac, Washington ("Pacific Highway Motel 6"); and 18900 47th Avenue South, SeaTac, Washington ("47th Avenue Motel 6").

27. At all relevant times, G6 Defendants owned, operated, managed, maintained, inspected, secured, supervised, and controlled the following locations; and transacted business in the State of Washington and purposefully availed itself to



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

the State of Washington through its operation, control and ownership of the following Motel 6 locations:

a. Motel 6, 16500 Pacific Hwy, SeaTac, WA 98188

b. Motel 6, 18900 47th Ave. S., SeaTac, WA 98188

28. Whenever reference is made in this Complaint to any act, deed, or conduct of SeaTac Hotels, LLC and/or Jarnail Singh, the allegation is that SeaTac Hotels, LLC and/or Jarnail Singh engaged in the act, deed or conduct by or through one or more of their officers, directors, agents, staff, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the G6 Defendants.

29. Whenever reference is made in this Complaint to any act, deed, or conduct of the G6 Defendants, the allegations is that the G6 Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, staff, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of each of the G6 Defendants and/or SeaTac Hotels, LLC and Jarnail Singh.

**JURISDICTION AND VENUE**

30. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the Trafficking Victims Protection Reauthorization Act ("TVPRA").

31. Venue is proper in this court pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendant's misconduct and omissions, led to injuries that occurred in the judicial district where this action is brought.

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

32. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d), at least one Defendant is a resident of the King County, Washington, and all Defendants are registered to do business and were doing business in Washington.

## SEX TRAFFICKING UNDER FEDERAL LAW

33. Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[5]

34. The requirements for liability under the TVPRA on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value" (2) "from participating in a venture" (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

35. "Sex trafficking" is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

36. The term "severe forms of trafficking in persons" includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age." 22 U.S.C. § 7102(11).

///

///

///

[5] 18 U.S.C. §1591; 22 U.S.C. § 7102.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

## **FACTUAL ALLEGATIONS**

### **The Hospitality Industry Aids and Abets Sex Traffickers**

37. The Defendants' knowledge and notice is not limited to the specific red flags of sex trafficking and commercial sex involving a minor in this case that were exhibited at the subject motel locations in the presence of Defendants' staff. The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what the Defendants knew or should have known regarding the trafficking at their subject motel locations, including the trafficking of Jane Doe. The hospitality industry and Motel 6's parent companies have been aiding and abetting sex trafficking for decades.

38. Hotels are the primary place where sex trafficking happens.[6] Both industries have operated in a symbiotic relationship and both have profited from sex trafficking. For years, sex traffickers have "been able to reap their profits with little risk when attempting to operate within hotels."[7] According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur. In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels."[8] Traffickers and buyers alike frequently use hotel rooms to exploit victims.

///

///

---

[6] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's also Big Business*, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us-slavery/

[7] *See Human Trafficking in the Hotel Industry*, Polaris Project (Feb. 10 2016), https://polarisproject.org/blog/2016/02/human-trafficking-in-the-hotel-industry/

[8] Michele Sarkisian, Adopting the Code: Human Trafficking and the Hotel Industry, Cornell Hotel Report (Oct. 2015),



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

39. In 2017, human trafficking was noted as the world's fastest growing crime.[9] While the term "human trafficking" incorporates all forced labor, the sex trafficking industry alone brings in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of all illegal drugs.[10]

40. The hospitality industry plays a crucial role in the sex trade.[11] Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Despite the known risks and known trafficking crimes, Hotel owners and operators, including the Defendants, offer anonymity and non-traceability to the traffickers, making them ideal venues for crime and sex trafficking in particular. Hotels, including the Defendants, knowingly harbor traffickers, buyers, and victims.

41. According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur. Traffickers and buyers alike frequently use hotel rooms to exploit victims.

42. Due to the overall hospitality industry's complacency, complicity, and knowing reckless disregard in addressing the known issue of sex trafficking, hotels are the venue of choice for sex trafficking. Traffickers and buyers capitalize on the hospitality industry's general refusal to (1) adopt and enforce companywide anti-trafficking policies from the corporate brand to the property level, (2) train staff on what to look for and how to respond, and/or (3) establish safe and secure reporting mechanisms for those at the point of sale.

///

[9] Human Trafficking is the World's Fastest Growing Crime. May 22, 2017. The Advisory Board. Available at: https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking

[10] Profits and Poverty: The Economics of Forced Labor. May 24, 2014. International Labor Organization. Available at: http://www.ilo.org/global/publications/ilo-bookstore/orderonline/books/WCMS_243391/lang--en/index htm.

[11] Cavagnaro, Giovanna L. C. 2017. Sex Trafficking: The Hospitality Industry's Role and Responsibility. Cornell University School of Hotel Administration. Available at: http://scholarship.sha.cornell.edu/honorstheses/3.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

43. Every day, thousands of hotel staff witness manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

44. Hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual exploitation and should be held accountable when they fail to comply. As stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."

45. Even estimates by attorneys for the hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[12] The 2016 Trafficking in Persons Report issued by the United States Department of State also confirmed that human trafficking occurs in the hospitality industry in the United States.

46. The complicity of the hospitality industry is essential to the perpetuation of human trafficking, allowing traffickers to remain transient, collect profits, and evade detection. Sex trafficking ventures move from place to place so that they are less visible to law enforcement. Similarly, sex traffickers also want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are well aware of the seclusion and anonymity attendant with booking rooms with certain hotel chains, including the Hotel chain named in this complaint — they know it is unlikely that they will be disturbed.

///

[12] U.S. Dep't of State. 2016. 2016 Trafficking in Persons Report, at 387. Available at: https://www.state.gov/documents/organization/258876.pdf.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

47. Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.

48. The most effective weapon against sexual exploitation and human trafficking is education and training.[13] As PACT concluded:

> *Due to the anonymous, risk-free nature of the hospitality industry, children across the globe are exploited in hotels—ranging from budget properties to luxury resorts. Hotel associates are uniquely situated to identify and report suspicious activity. From check-in to check-out there are a number of indicators victims and traffickers exhibit during the time they are on a hotel property. With proper training, a front desk agent or a housekeeper can notice that something is not right and respond.*[14]

49. Free resources are abundantly available to the hotel industry that provide effective trafficking recognition and response training. Every hotel – large and small, luxury and modest, urban and rural – has the resources to implement a viable anti-trafficking program.

50. Multiple agencies have established recommended policies and procedures for recognizing the signs of sex trafficking. Each of the following organizations offer guidance and recommendations for viable programs in this context:

///

---

[13] Polaris Project, *Recognizing Human trafficking*, https://polarisproject.org/recognizing-human-trafficking/

[14] PACT USA, *Hotel Training for Associates and Managers*, https://courses.wearepact.org/hotel-training



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

a. The United States Department of Homeland Security – DHS Blue Campaign
b. The National Center for Missing and Exploited Children
c. The Polaris Project
d. The Texas Attorney General
e. Love 146
f. Protect All Children from Trafficking - PACT
g. United Nations Universal Declaration of Human Rights
h. United Nations Global Compact
i. United Nations Guiding Principles on Business and Human Rights
j. The Code – The Tourism Child Protection Code of Conduct
k. National Human Trafficking Resource Center and Hotline
l. HHS/ACF Look Beneath the Surface
m. Businesses Ending Slavery and Trafficking - BEST
n. Sustainable Hospitality Alliance Trafficking Recommendations
o. American Hotel Lodging Association Trafficking Recommendations

51. The leading federal agency in this area is The United States Department of Homeland Security (DHS) Blue Campaign. The Blue Campaign is the unified voice for the U.S. Department of Homeland Security's efforts to combat human trafficking. While much has changed with DHS during the current administration, the Blue Campaign historically strived to protect the basic right of freedom and bring those who exploit human lives to justice.[15]

///

///

[15] https://www.dhs.gov/blue-campaign



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

52. At all relevant times, the Blue Campaign recognized that traffickers have long used the hotel industry for sex trafficking and offered resources for the industry, including an essential list of actions these businesses could have taken to help stop human trafficking.

53. The Blue Campaign has produced lists of warning signs of human trafficking for members of the hotel industry. The DHS remarked in the past "Hotel and hotel staff are often in the best position to see potential signs of human trafficking, especially since your duties give you access to different areas of the properties. You may also have direct or indirect contact with both traffickers and victims."[16] Sex trafficking "red flags" applicable to this lawsuit are described below. The compendium of "red flags" was and still is available as part of the Blue Campaign Hospitality Toolkit. [17]

54. The Blue Campaign provided and provides specific "signs of human trafficking for housekeeping, maintenance, and room service staff.[18] According to the Blue Campaign: "Housekeeping, maintenance, and room service staff typically have the most access to guest rooms where signs of human trafficking may be apparent. By being conscious of human trafficking indicators, you can help identify possible human trafficking activities and victims."

55. There is a distinct list of "red flags" that pertain specifically to "concierge, bellman, front desk, security, and valet staff." These staff are typically the first to see guests when they enter the hotel and should be trained to detect signs of potential

---

[16] *Id*; *see also* Indicators of Human Trafficking, https://www.dhs.gov/blue-campaign/indicators-human-trafficking

[17] Blue Campaign. One Voice. One Mission. End Human Trafficking. Hospitality Toolkit. https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

[18] *Id.*



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

trafficking."[19] There is yet an additional category dedicated to providing signs of human trafficking for "food and beverage staff" in the hospitality industry.

56. Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking in the hospitality industry, which Defendants were aware or should have been aware of at all subject times of the trafficking alleged herein, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;
- Individuals show signs of physical abuse, restraint, and/or confinement;
- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;
- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;
- Individuals lack freedom of movement or are constantly monitored;
- Individuals avoid eye contact and interaction with others;
- Individuals have no control over or possession of money or ID;
- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;
- Individuals have few or no personal items—such as no luggage or other bags;
- Individuals appear to be with a significantly older "boyfriend" or in

[19] *Id.*



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

the company of older males;

- A group of girls appears to be traveling with an older female or male;
- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;
- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;
- Possession and presence of bulk sexual paraphernalia such as condoms or lubricant;
- Possession or use of multiple cell phones;
- Possession or use of large amounts of cash or pre-paid cards;
- "Do Not Disturb" sign used constantly;
- Requests room or housekeeping services (additional towels, new linens, etc.), but denies hotel/hotel staff entry into room;
- Refusal of cleaning services for multiple days;
- Excessive amounts of cash in a room;
- Smell of bodily fluids and musk;
- Presence of multiple computers, cell phones, pagers, credit card swipes, or other technology;
- The same person reserving multiple rooms;
- Individuals leaving the room infrequently, not at all, or at odd hours;
- Individuals loitering in hallways or appearing to monitor the area;
- Excessive amounts of alcohol or illegal drugs in rooms;



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

- Evidence of pornography;
- Excessive number of people staying in a room;
- Extended stay with few or no personal possessions;
- Provocative clothing and shoes;
- Constant flow of men into a room at all hours;
- Excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);
- Patrons checking into room appear distressed or injured;
- Room paid for with cash or pre-loaded credit card;
- Excessive use of hotel computers for adult oriented or sexually explicit websites;
- Patrons not forthcoming about full names, home address or vehicle information when registering;
- Individuals dropped off at the hotel or visited repeatedly over a period of time;
- Individuals checking into room have no identification;
- Room is rented hourly, less than a day, or for long term stay that does not appear normal;
- Patrons request information or access to adult services or sex industry;
- Room rented has fewer beds than patrons;
- Individuals enter/exit through the side or rear entrances, instead of the lobby;
- Car in parking lot regularly parked backward, so the license plate is not visible;



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

- Individuals asking staff or patrons for food or money.

57. The above policies and warning signs are designed to reduce sex trafficking. These "red flags" compose the standard of what hotels must look out for and know to look out for, and all of which have been known to the hospitality industry, G6 Defendants and the people behind the G6 Defendants' companies since long before 2014.

58. The Department of Homeland security has long urged businesses – such as the subject hotels and hotel chains – to utilize the free educational services offered by the Blue Campaign to help identify victims of human trafficking by raising awareness and encouraging the public to report instances of human trafficking.[20]

59. Federal government agencies have also historically published extensive tools for responding to suspected sex trafficking. One compendium is the United States Department of Health and Human Services "Identifying Victims of Human Trafficking – Fact Sheet."[21] This document acknowledges that responding to sex trafficking requires affirmative action: "It is important to be vigilant and to 'look beneath the surface' in situations that don't seem quite right. One chance encounter could be a victim's best hope for rescue."[22]

60. It is widely recognized that effective training has a substantial, positive impact on the prevalence and scope of trafficking.[23] According to the American Hotel Lodging Association: "Hotel staff who have undergone training are more aware of

[20] https://www.dhs.gov/blue-campaign

[21] United States Department of Health and Human Services , Fact Sheet: Identifying Victims of Human Trafficking, https://acf.gov/sites/default/files/documents/orr/fact_sheet_identifying_victims_of_human_trafficking.pdf

[22] *Id.*

[23] Emily Roman, "Evaluating the Impact of Training Staff to Identify Victims of Human Trafficking" (2019). Digital Commons @ ACU, Electronic Theses and Dissertations. Paper 152, https://core.ac.uk/download/212874317.pdf



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

trafficking when it happens and are more willing to report it – than those who have not been trained."[24]

61. Thus, when hotels implement viable anti-trafficking measures, provide proper training, and enforce anti-trafficking policies, trafficking is less likely to occur, and victims are more likely to be rescued.

62. Conversely, when training is not provided and when anti-trafficking policies are not enforced, hotels and their staff are much more likely to participate in and facilitate the trafficking of victims like Jane Doe.

63. From the top, major hotel brands like Motel 6, including all of the G6 Defendants and the people behind each company, know that sex trafficking is occurring at their properties and they are getting consistent reports from their employees, law enforcement and government officials regarding the same. Unfortunately, instead of taking expedient, specific and zero-tolerance action and policies to stop and prevent it, Motel 6 companies have merely treated it as a cost/benefit analysis in terms of how likely they were to get sued or held accountable versus the profits it was generating. Until recently, lawsuits were not being filed, and they were not being held accountable. Now, through this lawsuit, Jane Doe intends to hold them fully accountable and to make sex trafficking an unprofitable venture for Defendants to participate in.

64. To be truly effective, human trafficking training should be part of an ongoing education and communication program to provide hotel staff with the knowledge and support they need to ensure a safe environment for all staff and

---

[24] American Hotel Lodging Association, No Room for Trafficking, https://www.ahlafoundation.org/nrft/



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

guests.[25]

65. The relationship between a pimp and prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in "prostitution," also known as "commercial sex," are subject to force, fraud, and/or coercion. It is also well understood that "prostitution" and "sex trafficking" involve a common denominator: the exchange of sex for money that goes to a controlling abuser/captor.

66. Minor victims of sex trafficking bringing civil claims under the Trafficking Victims Protection Reauthorization Act (TVPRA) face different proof requirements than adult victims. Minors trafficked for commercial sex need not prove force, fraud, or coercion. Under 18 U.S.C. § 1591(a), sex trafficking of a minor under 18 years of age constitutes a violation regardless of whether force, fraud, or coercion was used.

67. In 2022, Congress passed the Eliminating Limits to Justice for Child Sex Abuse Act, 18 U.S.C. § 2255, which eliminates the statute of limitations for survivors who were minors at the time they were trafficked and subjected to child sex abuse.

68. Every day, thousands of hotel staff witness manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

///

///

[25] Five Ways Human Trafficking Training Can Help Hotels Increase Awareness and Prevention (2020), https://hospitalitytech.com/five-ways-human-trafficking-training-can-help-hotels-increase-awareness-and-prevention



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

69. At all relevant times, long-standing, well known, viable standards of conduct and corporate operations were available to the hotel industry to combat, prevent, and end sex trafficking at their properties.

70. At all times of trafficking alleged herein, Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Defendants knew or should have known that signs of commercial sex activity, in combination with any other red flags, in their hotels were in fact signs of sex trafficking and should have and did see signs of the sex trafficking of Jane Doe that were observable by Defendants.

71. Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their motel properties, including the subject properties, when enacting and enforcing policies and procedures applicable to those motels and when training, educating, and supervising the staff of each motel.

72. Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel staff can identify and respond to sex and labor trafficking, it has become apparent that the decision of Defendants to continue generating revenue from traffickers without taking reasonable steps to identify and prevent trafficking in its motels—or in the face of actual knowledge that its happening—is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

**G6 Defendants Controlled the SeaTac Hotels, LLC franchised Motel 6 Location and Owned and Controlled the Pacific Highway Motel 6.**

73. G6 Defendants directly controlled the subject Motel 6 properties for the entire time Jane Doe was trafficked there, including the 47th Avenue location it



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

franchised to SeaTac Hotels, LLC. G6 Defendants, by and through Motel 6 Operating, L.P., directly owned and controlled the Pacific Highway Motel 6.

74. G6 Defendants controlled many day-to-day operations at the 47th Avenue Motel 6 and all operations at the Pacific Highway Motel 6. G6 Defendants benefitted from the room rentals at each and knew that trafficking was occurring constantly at the motels when Jane Doe was trafficked there.

75. Defendants' knowledge and notice of trafficking at these locations is established by the fact that many other survivors have spoken out, and some have brought lawsuits against Defendants, because they were also openly trafficked for sex at these exact Motel 6 properties.

76. G6 Defendants are vicariously liable for the acts, omissions, and knowledge of SeaTac Hotels, LLC and the owner of the SeaTac Hotels, LLC, which are and were at all relevant times the G6 Defendants' actual agents or subagents.

77. Upon information and belief, it is a standard practice in the hospitality industry, followed by the G6 Defendants, for Parent companies to set exacting brand quality standards controlling everything from the temperature at which coffee shall be served, to the number of pillows that are placed on the beds, to the décor, to the types of payments accepted, to procedures followed in response to crime, to when, where, and how guests are greeted.

78. At all relevant times, G6 Defendants provided SeaTac Hotels, LLC with signage on and in front of the building. This is done to assure customers that when they check in, they can expect an experience consistent with the standards of the G6 Defendants' Motel 6 brand. This brand logo is displayed on everything in the motel, such as pens and paper on the bedside table and staff uniforms worn at the front desk during check-in and around the property.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

79. G6 Defendants provide their hotel branded locations brand name recognition, a marketing campaign, and motel listings in the Global Distribution System and other online agency databases. They also provide access to their brand-wide central reservation systems, 800 numbers, revenue management tools, brand loyalty programs, the Hotel Key App, G6 GROW by Above Property, internal risk analyses, a Customer Care Department, internal incident reporting processes, and company websites. Therefore, bookings, room reservations, security, and incidents that create liability risk, are primarily controlled by G6 Defendants.[26]

80. G6 Defendants subject SeaTac Hotels, LLC to detailed standards and requirements regarding the operation of the Motel 6 locations named herein through the franchising agreements, detailed written policies and manuals and through other formal and informal protocols, inspections, directives, mandates, reporting, and expectations imposed by the G6 Defendants. In doing so, G6 Defendants exercise substantial and pervasive control over all aspects of operations at Motel 6 locations, including without limitation at the 47th South Motel 6.

81. At all times relevant, G6 Defendants had direct knowledge of ongoing crime occurring at the subject properties that were consistent with its knowledge of sex trafficking and the red flags of sex trafficking. They had direct knowledge through reports, inspections, communications with law enforcement and the public, as well as by and through their employees and agents who directly witnessed and reported the red flags of trafficking such that they knew and should have known sex trafficking was occurring at the subject Motel 6s. Despite this, G6 Defendants continued to facilitate sex trafficking by implementing and mandating certain

[26] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (Apr. 10, 2018), The Origins and Growth of Franchising in the Hotel Industry (lodgingmagazine.com).



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

policies and procedures that allow for anonymity of traffickers, and exceptions for traffickers as to its other policies and procedures like reporting crime. Indeed, G6 Defendants deliberately took actions with SeaTac Hotels, LLC and Jarnail Singh to try to hide the crime that was consistent with trafficking.

82. Upon information and belief, G6 Defendants required their branded properties including the subject branded properties, to use its property management system. This system was linked to the G6 Defendants' corporate network and data center. This is to, among other things, receive reservations, all related customer data, crime data, and process payment transactions for profit. G6 has the data for each of its Motel 6 locations, including historical data. G6 therefore also has the incident reports, including and especially related to police activity, crime, calls for service, warrants, and surveillance footage pulled for law enforcement.

83. Upon information and belief, per the relevant franchise agreements, G6 Defendants may enforce their brand standards through regular periodic inspections of the motel locations, backed up with the ultimate threat of termination of the agreement.[27] G6 Defendants employ regional and property managers, Safety and Security directors and officers, and other employees responsible for overseeing and controlling operations at their franchised properties. Accordingly, Defendants are well aware of what is going on at each franchised property, and were certainly aware at all relevant times alleged herein at what was happening at the subject 47th Avenue location, including but not limited to the problems with crime and sex trafficking, which have already been the subject of multiple lawsuits.

///

///

[27] Many of the franchise disclosure documents, which outline the policies and procedures of franchise agreements can be accessed publicly on https://fddexchange.com/view-fdd-docs.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

**SeaTac Hotels, LLC and Jarnail Singh Acted as an Actual Agent of G6 Defendants.**

84. G6 Defendants are vicariously liable for the acts, omissions, and knowledge of SeaTac Hotels, LLC and Jarnail Singh, their staff, and staff of all of the locations named herein, which are G6 Defendants' actual agents or subagents and under G6 Defendants' control, including G6's direct employees.

85. Jarnail Singh was at all times the managing agent, owner and/or manager of SeaTac Hotels, LLC and at all times relevant acted as the manager and/or controller of the subject 47th Avenue Motel 6 and took direct actions to facilitate sex traffickers, including Plaintiff's trafficker, in their sex trafficking ventures including but not limited to by allowing them free reign and access to the premises, giving them rooms with easy private access in the back of the property, allowing them to have buyers come in and out without ID or parking pass day and night, not requiring proper ID or credit cards that matched for guests, intentionally going against law enforcement directives, failing to keep proper stay records to allow for trafficker anonymity, maintaining doors without locks all around the property, allowing criminal activity and drug use all around the property, refusing to put locks on doors despite law enforcement directives, and directing security guards not to call the police.

86. At all times relevant, Jarnail Singh reported to G6 Defendants and at all times relevant acted on G6 Defendants' and SeaTac Hotel LLC's behalf in operating the subject 47th Avenue Motel 6.

87. At all times relevant, Jarnail Singh participated in sex trafficking ventures, including the specific venture that trafficked Plaintiff, through his accommodations of traffickers, his choice not to report or intervene, and by harboring



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

the traffickers and Plaintiff in exchange for cash room payments, while he knew or should have known that Plaintiff and other minors were engaging in commercial sex and that adult victims were forced to engage in commercial sex.

88. At all times relevant, Jarnail Singh benefitted financially from the rooms rented for the apparent and direct purpose of trafficking Plaintiff and other children and adults for sex.

89. G6 Defendants controlled the Motel 6 locations named herein by requiring the Motel 6s and their owners and managers to adhere to detailed standards and requirements regarding the day-to-day operation of the Motel 6 locations named herein, including through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, reporting, and expectations imposed by the G6 Defendants.

90. Upon information and belief, at all times relevant herein, Defendants, and each of them, were the apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible servants, servants, apparent ostensible staff, staff, apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of their co-defendants and were acting as such within the course, scope and authority of said agency and employment, and that each of the Defendants, as aforesaid, when acting as a principal or agent, was negligent, including but not limited to, in the hiring, training, retention, and supervision of each and every other Defendant as an agent, servant, employee, assistant, and consultant.

91. Upon information and belief, every act or omission of the Defendants and their apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible servants, servants, apparent ostensible staff, staff,



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of their co-defendants, whether or not within the scope of their agency, was ratified by the other remaining Defendants.

92. G6 Defendants intentionally conceal the full extent of their control over their Motel 6 locations by treating the manuals and certain policies as "confidential" and "proprietary" and prohibiting any public disclosure of those policies and manuals.

93. Upon information and belief, the standards that G6 Defendants imposed on SeaTac Hotels, LLC and Jarnail Singh:

a. Did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools SeaTac Hotels, LLC and Jarnail Singh used at their Motel 6 locations;

b. Covered virtually all aspects of motel operations, including internal operating functions and the hiring, training, and supervision of employees;

c. Dictated the specific manner in which SeaTac Hotels, LLC and Jarnail Singh, and its motel staff must carry out most day-to-day functions at their Motel 6 location; and

d. Significantly exceeded what was necessary for G6 Defendants to protect its registered trademarks.

94. G6 Defendants were in an agency relationship with SeaTac Hotels, LLC and Jarnail Singh. Upon information and belief, this agency relationship was created through G6 Defendants' exercise of an ongoing and systemic right of control over SeaTac Hotels, LLC and Jarnail Singh, including the means and methods of how SeaTac Hotels, LLC and Jarnail Singh conducted daily business through one or more of the following:



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

a. Sharing profits;

b. Requiring SeaTac Hotels, LLC to use G6 Defendants' Motel 6 customer rewards program;

c. Hosting online bookings on G6 Defendant's Motel 6 developed, owned, and operated domain;

d. Regulating internet access for guests;

e. Setting employee wages;

f. Making decisions about employment and budgets, including for security and management;

g. Advertising for management and local positions;

h. Standardized training and methods for SeaTac Hotels, LLC staff;

i. Standardized or strict rules of operation;

j. Oversight in hiring and/or terminating staff and managers;

k. Building and maintaining the SeaTac Hotels, LLC properties;

l. Fixing prices; and/or

m. Creating advertising campaigns and unrealistic, deceptive, and misleading expectations of safety for guests.

95. G6 Defendants held the SeaTac Hotels, LLC 47th Avenue Motel 6 property and operators, including Jarnail Singh, out to the public as possessing authority to act on their behalf.

96. In addition to the ways described above, upon information and belief, G6 Defendants exercised and reserved the right to exercise systemic and pervasive control over SeaTac Hotels, LLC and Jarnail Singh's day-to-day operation of the subject 47th Avenue Motel 6 location named herein, including the following ways:

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

a. G6 Defendants required SeaTac Hotels, LLC and management of SeaTac Hotels, LLC, including Jarnail Singh, to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for G6 Defendants to protect their registered trademarks;

b. G6 Defendants provided training for hotel management and select hotel staff on-site at the Motel 6 locations selected by G6 Defendants;

c. G6 Defendants required all motel staff to participate in training it created through an online learning platform it controlled and maintained;

d. G6 Defendants controlled training provided by SeaTac Hotels, LLC and Jarnail Singh to motel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;

e. G6 Defendants retained sole discretion to determine whether all training had been completed satisfactorily;

f. For certain products and services that SeaTac Hotels, LLC and/or Jarnail Singh were required to purchase to operate the Motel 6 locations named herein, G6 Defendants designated approved vendors and prohibited the locations from purchasing goods and services from anyone other than an approved vendor;

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

g. Upon information and belief, G6 Defendants required SeaTac Hotels, LLC and/or Jarnail Singh to sign a technology agreement governing the terms under which they must procure and use technical services and software while operating the Motel 6 locations named herein. SeaTac Hotels, LLC and Jarnail Singh were required to install, and use certain brands, types, makes, and/or models of hardware, software, peripheral equipment, and support services to perform internal operating functions at the hotel;

h. G6 Defendants set required staffing levels for the Motel 6 locations named herein;

i. G6 Defendants established detailed job descriptions for all positions in its Motel 6 locations and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so;

j. G6 Defendants set requirements for the hiring process used by the Motel 6 Locations named herein and oversaw employee discipline processes and termination decisions;

k. G6 Defendants provided benefits for staff of the SeaTac Hotels, LLC;

l. G6 Defendants required the SeaTac Hotels, LLC to use a customer resource management program maintained and operated by the G6 Defendants;

m. G6 Defendants controlled channels for guests to report complaints or provide feedback regarding the Motel 6 location and directly



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

participated in the response and/or supervised the response to customer complaints or other feedback. G6 Defendants retained the right to provide refunds or other compensation to guests and to require SeaTac Hotels, LLC to pay associated costs;

n. G6 Defendants generated reports and analysis of guest complaints and online reviews for the subject Motel 6 locations;

o. G6 Defendants required the SeaTac Hotels, LLC to use a Guest Relations Application owned, operated, and maintained by G6 Defendants to manage all guest data and information. G6 Defendants could use the backend of this system to analyze data and generate reports and did so;

p. G6 Defendants set detailed requirements for insurance that the SeaTac Hotels, LLC must purchase, and G6 Defendants retain the right to purchase insurance for the SeaTac Hotels, LLC and to bill it directly for that insurance if G6 Defendants in their sole discretion determine that it has not purchased adequate insurance;

q. G6 Defendants regularly audited the books and records of SeaTac Hotels, LLC;

r. G6 Defendants conducted frequent and unscheduled inspections of Motel 6 locations, including the Motel 6 locations named herein;

s. G6 Defendants retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of any agreements if the SeaTac Hotels, LLC or Jarnail Singh on behalf of SeaTac violated any of the G6 Defendants'



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the Motel 6 locations named herein;

t. G6 Defendants controlled all marketing for subject Motel 6 locations and prohibited them from maintaining any online presence unless specifically reviewed and approved by the G6 Defendants;

u. G6 Defendants imposed detailed recordkeeping and reporting requirements on SeaTac Hotels, LLC regarding virtually all aspects of hotel operations;

v. G6 Defendants met directly with Jarnail Singh and he reported to them about what was occurring at the 47th Avenue property, including criminal conduct and sex trafficking indicators;

w. G6 Defendants supervised and controlled day-to-day operations of the Motel 6 locations named herein through detailed information and extensive reports that it obtained through the property management system and other software systems it also required the SeaTac Hotels, LLC to use; and

x. G6 Defendants retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of motel operations.

**<u>G6 Defendants Knowingly Benefited from Participation in a Venture with SeaTac Hotels, LLC, Jarnail Singh and Jane Doe's Traffickers.</u>**

97. At relevant times, G6 Defendants owned many Motel 6 locations throughout Washington State and the United States, and also lent their name and



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

likeness to third-party owners, while supervising and retaining control over the building and operations of all G6 brand motels. This is done through brand standards, franchise agreements, manuals and written rules, and maintaining control over all aspects of operations. This allows the parent brand to exchange the high risk that is inherent in directly owning an asset like a motel for the lower risk associated with owning a property contract or franchise contract and pocketing the profit. Because of this, the motel locations and parent brands are inextricably intertwined. Here, Seatac Hotels, LLC, Jarnail Singh, and G6 Defendants are inextricably intertwined.

98. Additionally, the Motel 6, 16500 Pacific Hwy, SeaTac, WA 98188 Motel 6® location is and at all times relevant hereto was directly owned and operated by a G6 Defendant entity, Motel 6 Operating, L.P. As such, they are even more intertwined since G6 Defendants are a joint venture and essentially all operate together and share the same information, data, profits, and revenue, and are controlled by the same individual people. The average customer never sees the franchisor/franchisee relationship. The parent brand gives the franchisee or individual property its identity and induces customers to reserve rooms at the franchisee in reliance on the parent brand to set standards and ensure customer safety. The parent brand provides the signage that assures customers that if they check into that motel, then they can expect the standards consistent with the parent brand. The Motel 6s are advertised as Motel 6s, not a motel owned by anyone other than G6. The G6 Defendants hold themselves out to the public as the owners of the franchised properties. Brand requirements and rules are contractual with the power to control weighed heavily toward the parent brand G6 Defendants. The Brand, here G6 Defendants, retain control over the properties.

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

99. At all times of trafficking alleged herein and currently, booking and room reservations are controlled and monitored by the G6 Defendants.

100. Upon information and belief, at all times of trafficking alleged herein and currently, the franchised 47th Avenue Motel 6 paid and continues to pay a percentage of their total revenue back to the G6 Defendants, and was at all relevant times required to develop and maintain the property in accordance with the parent brand G6 Defendants' standards as they are laid out in the franchise agreements.

101. G6 retains the right of entry and inspection, response to crime, response to trafficking, implementation and enforcement of anti-trafficking rules, and trainings related to the same. SeaTac Hotels LLC and Jarnail Singh benefited from room rentals and paid a portion of the room rentals to G6 Defendants.

102. Upon information and belief, per the agreements, the G6 Defendants may enforce standards through periodic inspections and even termination of the franchise agreement if the franchise hotel is found to be inadequate, unsafe, or operating in violation of any laws.

103. The right of the G6 Defendants to enforce their brand standards, including safety standards, is not just their right but their responsibility.

104. Here, G6 Defendants reserved the right to inspect and actually did have employees who inspected the properties at relevant times when plaintiff was being trafficked there.

105. G6 Defendants' employees observed all of the red flags of Jane Doe being trafficked for sex, and knew or should have known that she, as well as several others, were indeed being trafficked for sex for long periods of time at these Motel 6 locations.

///

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

106. At all times of trafficking alleged herein, G6 Defendants dictated franchisee policies related to safety, security, human trafficking, employee training and franchisee's response. As to the properties they owned, they dictated every single aspect of day-to-day operation and are directly responsible for their employees, managers, supervisors, regional managers, officers, directors and agents conduct in knowingly facilitating, aiding, abetting, and allowing trafficking to occur at the subject Motel 6 locations for profit.

107. Upon information and belief, at all times of trafficking alleged herein, reservation information for rooms at the subject motels passed through a system operated and managed by the G6 Defendants.

Defendants profited from the sex trafficking of Jane Doe when they rented rooms to her trafficker knowingly and under circumstances such that they knew or should have known that commercial sex and human trafficking were occurring due to several red flags being apparent and visible.

108. Defendants benefited from the steady stream of income that Jane Doe's trafficker, and many other traffickers, brought to their motels and motel brands. Defendants profited from each and every room that Jane Doe's trafficker rented where Jane Doe was harbored and maintained for the purpose of sex trafficking.

109. Defendants facilitated the trafficking of Jane Doe for sex when she was a minor through their practices, policies, and procedures.

110. Specifically, Defendants failed to take appropriate action to prevent the trafficking of adult and child victims, including Jane Doe, so they could continue to profit from the room rentals and business that trafficking brought them. Defendants accommodated Jane Doe's traffickers' requests, allowed cash payments for extended periods, allowed men to parade in and out of the rooms where she was being trafficked



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

despite not being guests, allowed money exchanges to take place in front of them, watched as Jane Doe and another child were escorted to and from the property for commercial sex and watched and heard rape and signs of commercial sex occurring daily in the rooms where Jane Doe was kept while Jane Doe was trafficked at each property for days at a time over and over and over again for months.

111. G6 Defendants, SeaTac Hotels, LLC, and Jarnail Singh owned and operated the subject locations as described above while buyers paraded in and out of rooms rented for the purpose of trafficking Jane Doe and her minor friend.

112. Defendants' staff and agents observed and should have observed the buyers parading in and out of its motel rooms to engage in the sex trafficking of Jane Doe. Their staff and agents observed or should have observed the trafficking occurring regularly and for multiple days at a time at the subject motel locations for months but allowed it so they could profit.

113. Jane Doe's trafficking at the subject motel locations was a result of G6 Defendants', SeaTac Hotels, LLC's, and Jarnail Singh's participation in a venture with each other as well as Jane Doe's criminal traffickers.

114. If G6 Defendants, Jarnail Singh and SeaTac Hotels, LLC had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe's trafficking at the subject motel locations and Jane Doe would not have suffered the harm that she did there.

115. Despite their actual and constructive knowledge that the venture it was engaged in was in violation of 18 U.S.C. §§1591(a) and 1595(a) through the conduct of motel staff and the widespread trafficking at the subject motel locations named herein, G6 Defendants participated in the venture by continuing to associate with the



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

motel staff and its employees and agents at the Pacific Highway Motel 6, and with SeaTac Hotels, LLC and Jarnail Singh to operate the 47th Avenue location, in a way that they knew or should have known would lead to further violations of 18 U.S.C. § 1591(a) including the trafficking of victims like Jane Doe and of Jane Doe in particular.

116. G6 Defendants, SeaTac Hotels, LLC, and Jarnail Singh financially benefited from renting rooms to Jane Doe's traffickers on numerous occasions since they benefited each day that Jane Doe was forced to engage in commercial sex at each of the Motel 6 locations for several days to weeks at a time for several months.

117. G6 Defendants participated in this venture through the conduct described herein as they were jointly responsible for relevant aspects of motel operations at the subject motel locations.

**<u>Defendants' Knowledge of Sex Trafficking at Their Locations.</u>**

118. Defendants' knowledge is not limited to a general awareness of the problem of sex trafficking in the hotel industry. Defendants have known, since well before Jane Doe's trafficking, that sex trafficking was ongoing and widespread *at their Motel 6 locations,* **including** the specific subject locations named herein at which Jane Doe was abused and trafficked.

119. Use of the G6 Defendants' branded properties for sex trafficking is well known to Defendants. Upon information and belief, before and at the time Jane Doe was trafficked at the subject properties, SeaTac Hotels, LLC, Jarnail Singh and G6 Defendants monitored criminal activity occurring at the branded hotels and were aware of activity indicating commercial sex, sex trafficking, and related crimes occurring at those branded motels, including the specific motel properties where Jane Doe was trafficked.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

120. Defendants knew staff at the subject Motel 6 properties were facilitating sex trafficking and that it was generating revenue through policies that encouraged sex traffickers to operate at their brand properties, including but not limited to choosing not to implement policies and procedures known to be necessary to stop known trafficking; not requiring identification cards or "IDs"; allowing daily payments of cash for extended stays; complying with requests for rooms to be rented away from other guests; allowing traffickers to escort bruised and battered women to rooms without IDs; allowing several buyers to come in and out of the rooms that victims were trafficked without ID; ignoring yelling and screaming from common areas and rooms where trafficking took place; ignoring obvious copious amounts of sex paraphernalia; not addressing the trafficking signs and reports of drugs, abuse and prostitution; not cooperating with law enforcement or following their directions to prevent the trafficking; forming relationships with traffickers and treating traffickers like "regulars" with benefits by accommodating specific requests that entail known signs of trafficking and not reporting the trafficking or taking any steps to prevent or stop it.

121. Defendants have had access to reviews left by guests on websites wherein guests frequently report, and at all relevant times reported, the prevalence of obvious trafficking red flags, hearing physical violence by traffickers, and other signs of trafficking at the subject locations and at most Motel 6 locations.

122. Information that has become public through news stories establishes the entrenched and pervasive nature of Defendants' role in providing a venue where sex trafficking has continued unabated for years. Defendants have provided the means and venue necessary for traffickers to traffic victims, including Jane Doe.

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

123. During the period Jane Doe was trafficked at the subject locations named herein, there were obvious signs that her traffickers were engaged in sex trafficking.

124. Other girls were trafficked at the same subject motels at the same time as Jane Doe and that was obvious to Defendants and Jane Doe.

125. Defendants' agents and employees saw and/or had knowledge that Jane Doe was at their properties for multiple weeks at a time over and over again, during which stays she was always escorted by or being watched by her traffickers, who would shove her, and would often forcibly grab her and abuse her at and around each property. Jane Doe's traffickers would further often linger around the motels, or directly outside the room door as Jane Doe was forced to have sex with customers at the subject motels. Her traffickers would get rooms at the Motel 6s for them as well as the minors, including Jane Doe.

126. Defendants and/or their agents and employees knew or should have known that this pattern of behavior and conduct was indicative of sex trafficking and/or abuse.

127. Defendants' employees and/or agents also saw Jane Doe's bruised and battered body – and looking unsure, young, afraid, monitored and controlled. Employees saw Jane Doe while she was a child; Jane Doe looked young.

128. Defendants' employees and/or agents heard Jane Doe being yelled at from the motel rooms, as her young friend was brutally beaten in front of her in one of the Motel 6 rooms.

129. In fact, on several occasions, on information and belief, Defendants' employees were present and actually heard and observed Jane Doe's trafficker hitting and abusing Jane Doe and her friend. Instead of providing help and calling the police,



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

Defendants' employees simply looked the other way in order to continue to reap the profits from the abuse and trafficking activities taking place at their motels.

130. Defendants' properties had security cameras, which undoubtedly showed an unusual pattern of heavy vehicular traffic on and off the Defendants' properties inconsistent with lawful guest activities, including heavy foot traffic in and out of Jane Doe's rooms . This foot traffic involved men who were not motel guests.

131. Several men came in and out of the same subject motel rooms repeatedly in a single day at various times. These individuals entered and left at unusual hours and were present at the motels for brief periods of time.

132. Jane Doe's traffickers could also be seen leaving Jane Doe's rooms when another male arrived and then returning as soon as that male left. This would happen multiple times a day for weeks at a time over and over again for most of 2014, when Jane Doe was still a child.

133. Jane Doe was trafficked at Defendants' two properties. Their comings and goings were visible to motel employees that were located at front desks and around the property, and on Defendants' security cameras. A reasonable motel would have seen these regular "red flag" interactions at their property in plain sight and understood them to be indicators of sex trafficking, and Defendants should have seen it and did see it by and through their employees and agents, including Jarnail Singh who directly witnessed these red flags of trafficking.

134. There were obvious signs of trafficking consistent with sex trafficking, and which included well known "red flags" for trafficking in a motel room, such as condoms, sex paraphernalia, minors in rooms without parents and buyers paraded in and out, abuse by buyers and traffickers, loitering of traffickers, Wi-Fi used for trafficking ads and communications, and more. These things were not only visible to



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

motel guests and employees, but also were visible and apparent to motel employees entering and cleaning the rooms, monitoring cameras, walking around the property, or even just collecting the trash.

135. Indeed, past employees have testified under penalty of perjury that signs of sex trafficking were regular occurrences at the properties around the time that Plaintiff was trafficked there.

136. Jane Doe was raped approximately hundreds of times at the Defendants' properties.

137. Buyers were allowed to do whatever they wanted to her and if she resisted, she was violently abused and mistreated by her traffickers and their buyers alike. When forced and coerced into coming and going from the subject motel locations, Jane Doe looked fearful, anxious, submissive and abused, and often had readily visible physical injuries and signs of abuse and assault.

138. Jane Doe's traffickers and/or associates were always watching her and the other children and young adults being repeatedly raped, abused, and trafficked at Defendants' properties , and Jane Doe's noticeable terror, trauma, demeanor and frail, battered condition were obvious to motel employees performing their day-to-day duties.

139. From approximately March 2014 through December 2014, Jane Doe, a child, was repeatedly taken to the subject Motel 6s and violently raped for commercial profit while Defendants reaped the profit of the rent they collected from her abusers, their repeat customers. The consistency and repeated nature of the trafficking would have put Defendants and their employees on notice of exactly occurring at their motels.

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

140. Upon information and belief, multiple employees at the subject motel locations named herein, including management-level employees, observed, or were made aware of these obvious signs of Jane Doe's trafficking while acting within the scope and course of their employment.

141. As such, Defendants knew and should have known that Jane Doe was being trafficked at the subject motel locations named herein.

**G6 Defendants, SeaTac Hotels, LLC, and Jarnail Singh's Specific Knowledge of Pervasive Sexual Assault and Trafficking at Motel 6 Locations.**

142. Examples below show the extraordinary frequency with which Defendants have long received and continue to receive evidence and reports that human trafficking is a known issue at their motel locations.

143. A Los Angeles Motel 6® became such a hub for human trafficking and other criminal activity that G6 Defendants paid to settle a public nuisance lawsuit related to such trafficking filed by the City of Los Angeles.[28]

144. The Los Angeles nuisance settlement required G6 Defendants to change policies that were facilitating sex trafficking.[29] G6 Defendants knew from that lawsuit, from many prior lawsuits, from reports sent to them by third parties, from reports from their branded locations and from their personal knowledge about sex trafficking at their locations, that their policies were facilitating sex trafficking. Based on information and belief, at all times relevant in this Complaint and currently, G6 Defendants have failed to adequately implement and enforce such changes.

[28] Motel 6 pays $250,000 to settle human trafficking suit (Aug. 31, 2017), https://www.cbsnews.com/news/motel-6-pays-250000-to-settle-human-trafficking-suit/.

[29] *Id.*



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

145. Public statements of G6 Defendants confirm that before and during the sex trafficking of Jane Doe, they had knowledge that sex trafficking is a problem in the hotel industry, sex trafficking was occurring at their branded motels, and that they retained control over and therefore were required to respond and address the unlawful conduct occurring at their branded motels. G6 Defendants recognized that "[t]raffickers often use hotels and motels for sex trafficking activities due to the privacy extended to guests."[30] They also acknowledged the significant role G6 Defendants' have in the "three D's": deterring, detecting, and disrupting sex trafficking in their branded motels.[31]

146. G6 Defendants admit on their website that they control the policies, procedures, training, and codes of conduct that have facilitated sex trafficking at its Motel 6 Brand motels, including at the subject locations where Jane Doe was trafficked and abused.[32]

147. G6 Defendants claim to take a zero-tolerance policy against sex trafficking at their Motel 6 Brand locations. However, G6 Defendants intentionally ensure its motels are "strategically located . . . close to airports, freeways, and other thoroughfares" making them attractive venues for trafficking and compelled prostitution.[33] For years, G6 Defendants' have chosen to place their branded locations, including the subject locations, in known trafficking areas/hubs. They have scouts that specifically choose these locations after gathering data regarding the crime and trafficking rates in the area as part of a larger analysis. G6 Defendants

---

[30] G6 HOSPITALITY ANTI-HUMAN TRAFFICKING TRAINING, http://g6propertycollateral.com/wp-content/uploads/2020/02/G6_TheRoomNextDoor_Training_V12b_NoFacilitator.pdf

[31] *Id.*

[32] https://g6hospitality.com/combating-human-trafficking/

[33] Motel 6 – An Iconic American Brand, https://g6hospitality.com/our-brands/#about-motel-six (last visited March 27, 2024).



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

then weigh their risk and knowingly choose to put their branded motels on or near "the blade" or streets specifically known for commercial sex and sex trafficking.

148. At the time of the trafficking alleged herein and currently, G6 Defendants' policies and procedures also provides the means for sex trafficking to harbor victims by providing low-rate rooms, accepting cash as payment, relaxed identification policies, not requiring IDs for persons entering and exiting the hotel, not providing adequate security, and providing multiple room keys for a single person.

149. Upon information and belief, before and at the time Jane Doe was trafficked at the subject Motel 6 locations, G6 Defendants, Jarnail Singh and SeaTac Hotels, LLC monitored criminal activity occurring at G6 branded motels and were aware of activity indicating commercial sex, sex trafficking and related crimes occurring at those branded motels, including the specific motel locations where Jane Doe was trafficked.

150. Scores of news stories from across the United States highlight G6 Defendants' facilitation of sex trafficking and certainly establish that G6 Defendants' and SeaTac Hotels, LLC knew, or should have known, of the use of Motel 6 motels, including the subject motels, for sex trafficking.

151. Information that has become public through news stories establishes the entrenched and pervasive nature of G6 Defendants', Jarnail Singh's and SeaTac Hotels, LLC's role in providing a venue where sex trafficking has continued unabated for years. Defendants have provided the means necessary for traffickers to traffic victims, including young girls like Jane Doe and Jane Doe herself. Among notable press involving the frequent use of Motel 6 motels for illegal trafficking activity, the following is noted:



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

a. In late 2003, a trafficker set up a sex trafficking venture at a Motel 6 in Connecticut in which two (2) young women were sold for sex eight (8) to ten (10) times per day.[34]

b. In April 2009, a sex trafficking venture operated out of a Motel 6 in Toledo, Ohio.[35]

c. In approximately September 2011, sex traffickers set up an operation at a Motel 6 in Toledo, Ohio to sell fifteen (15) and sixteen (16) year old girls for sex.[36]

d. In 2011, a man was charged for organized crime related to prostitution and commercial sex in Kent and Seattle, Washington, including at a Motel 6 near the SeaTac airport where a young woman was sold for sex.[37] The subject Motel 6s are near the SeaTac airport.

e. From approximately 2012 through October 2014, two (2) men engaged in a criminal sex trafficking venture of children which operated in part out of a Motel 6 in Harvey, Illinois.[38]

f. Police rescued an eighteen (18) year old girl from a sex trafficker in

---

[34] Amy Fine Collins, Sex Trafficking of Americans: The Girls Next Door, Vanity Fair (May 2011), https://www.vanityfair.com/news/2011/05/human-trafficking-201105

[35] Five Toledoans Indicted On Sex Trafficking Charges, ABC7Chicago.com (Nov. 7, 2010), https://abc7chicago.com/archive/7771888/.

[36] Mark Reiter, Two Toledoans Accused Of Juvenile Sex Trafficking, The Blade (Jun. 1, 2010), https://www.toledoblade.com/Courts/2012/06/02/2-Toledoans-accused-of-juvenile-sex-trafficking-1.html

[37] Steve Hunter, Man Reportedly Made at Least $192,000 in 8 Months from Postitutes in Kent, Seattle (Sept. 6, 2011), https://www.seattlepi.com/local/sound/article/Man-reportedly-made-at-least-192-000-in-8-months-2156781.php.

[38] Press Release, U.S. Dept. of Justice, Two Aspiring Rappers Charged With Operating Sex-Trafficking Ring In Chicago And Suburbs (Jan. 15, 2016), https://www.justice.gov/usaondil/file/813771/download.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

February 2012, at a Motel 6 in Portland, Oregon.[39]

g. The FBI investigated and arrested several individuals in December 2012, for the victimization and human trafficking of several young women and a juvenile at a Motel 6 in Madison, Alabama.[40]

h. The Orange County Human Trafficking Task Force busted a criminal enterprise in December 2012 that was selling women for sex out of a Motel 6 in Anaheim, California.[41]

i. Two men were arrested in March 2015 for sex trafficking a fifteen (15) year old girl at Motel 6 in Austin, Texas.[42]

j. In March 2015, police arrested a man for sex trafficking a runaway seventeen (17) year old at a Motel 6 in Warwick, Rhode Island.[43]

k. Over a fourteen (14) month period ending in approximately April 2015, at the same Motel 6 in Warwick, Rhode Island had seventy-five (75) arrests on its property for crimes including sex-trafficking.[44]

l. Seven (7) people were indicted in January 2016, by a Colorado

---

[39] Press Release, U.S. Dept. of Justice, Tacoma Pimp Sentenced To 25 Years For Sex-Trafficking Two Victims (Nov. 20, 2013), https://www.justice.gov/usao-or/pr/tacoma-pimp-sentenced-25-years-sex-trafficking-two-victims.

[40] FBI Investigates Human Trafficking At Madison Hotel, WHNT News 19 (Dec. 7, 2012), https://whnt.com/2012/12/07/fbi-investigates-human-trafficking-at-madison-motel/.

[41] Suspects Busted in Anaheim Sex Ring, ABC13 Eyewitness News (Dec. 5, 2012), https://abc13.com/archive/8909784.

[42] Lindsay Bramson, Local Teen Saved from Sex Slavery; Two Charged, KXAN Austin (Mar. 6, 2015), https://www.kxan.com/news/local/austin/local-teen-freed-from-sex-slavery-two-charged/1049580764.

[43] Amanda Milkovits, Massachusetts Man Accused of Trafficking Teen In Warwick Motel, NewportRI.com (Mar. 24, 2015), https://www.newportri.com/article/20150324/NEWS/150329666.

[44] Sarah Kaplan, Crime-Ridden Motel 6 In R.I. Will Hand Over Guest List To Police, The Washington Post (Apr. 28, 2015)https://www.washingtonpost.com/news/morning-mix/wp/2015/04/28/crime-ridden-motel-6-in-r-i-will-hand-over-guest-list-to-police/?utm_term=.a804ce3f32a8.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

grand jury for sex trafficking children from 2014 through the summer of 2015, out of hotels in Denver, Colorado, including a Denver area Motel 6.[45]

m. In the summer of 2015, a woman was arrested at a Motel 6 in Great Falls, Montana where she was involved in sex trafficking a seventeen (17) year old girl.[46]

n. A married couple was indicted in June 2015, for their roles in sex trafficking minor children ages seventeen (17), sixteen (16), and fifteen (15) years old out of a Motel 6 in Everett, Washington.[47]

o. In Tuscaloosa, Alabama police rescued a fourteen (14) year old girl from a Motel 6 in June 2015, and a grand jury subsequently charged her assailant with human trafficking and rape.[48]

p. In approximately July 2015, sex traffickers sold a fifteen (15) year old girl for sex at a Motel 6 in Pismo Beach, California.[49]

q. In approximately March 2013, sex traffickers began operating a sex trafficking venture out of Motel 6 locations in Bangor and Portland, Maine.[50]

---

[45] Hsing Tseng, Seven Indicted by Colorado Grand Jury In Child Sex Trafficking Ring Bust, Fox 31 Denver (Jan. 6, 2016), https://kdvr.com/2016/01/06/7-indicted-by-colorado-grand-jury-in-child-sex- trafficking-ring-bust/.

[46] Andrea Fisher, Woman Caught Up In Human Trafficking Ring Pleads Guilty (Aug. 29, 2016), https://www.greatfallstribune.com/story/news/local/2016/08/29/woman-caught-human-trafficking-ring-pleads-guilty/89566374/.

[47] Diana Hefley, County Investigating 45 Ongoing Human Sex Trafficking Cases, Herald Net (Jun. 26, 2015), https://www.heraldnet.com/news/county-investigating-45-ongoing-human-sex-trafficking-cases/.

[48] Tuscaloosa Man Charged With Rape And Trafficking Mississippi Teen, News Mississippi (Nov. 7, 28 2014), https://newsms.fm/tuscaloosa-man-charged-human-trafficking-mississippi-teen/.

[49] Matt Fountain, Four Accused Of Pimping Out 15-Year-Old Girl In SLO Will Stand Trial, SanLuisObispo.com (May 5, 2016), https://www.sanluisobispo.com/news/local/article75832962.html.

[50] Danielle McLean, What Drives Maine Sex Traffickers' Inhumanity, Bangor Daily News Maine Focus (Sept. 12, 2016), https://bangordailynews.com/2016/09/12/mainefocus/what-drives-maine-sex- traffickers-inhumanity/.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

r. Beginning in approximately May 2013, a fifteen (15) year old runaway was trafficked for sex out of the Motel 6 on Caton Avenue in Baltimore, Maryland.[51]

s. In Richmond County, Georgia a man was arrested at a local Motel 6 in October 2013 and charged with sex trafficking of two young women.[52]

t. In 2019, two men were charged in separate cases involving felony sex trafficking at the subject Motel 6 on 47th Avenue in SeaTac, Washington.[53] There, news outlets interviewed law enforcement that confirmed they had similar issues at this property for years.

152. Ultimately, at least several hundred traffickers involved with hundreds to thousands of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of G6 branded locations owned and controlled by G6 Defendants. Unfortunately, this is only a tiny fraction; most traffickers do not get arrested and charged for it.

153. In August 2016, Justin Love was killed and John Killarzoac was injured in a shooting at the Motel 6 on 47th Avenue at issue in this case. The shooter was Rodney Wheeler, a drug dealer with a lengthy criminal record.

154. In December 2017, KIRO 7 News reported there have been more than 400 police calls for service at a SeaTac Motel 6 in 2017 noting "there have been hundreds of drug and prostitution related cases that have come out of this motel and

[51] Anne Kramer, Man Faces Prison Time For Sex Trafficking Baltimore Teen, WBAL News Radio (Apr. 10, 2014), https://www.wbal.com/article/106578/2/man-faces-prison-time-for-sex-trafficking-baltimore-teen.

[52] UPDATE: Man Arrested For Sex Trafficking, WRDW.com On Your Side, (Oct. 3, 2013), https://www.wrdw.com/home/headlines/Man-arrested-for-sex-trafficking-226301261.html.

[53] VIDEO: Prosecutor: SeaTac Motel 6 Used for Sex Trafficking, (May 16, 2019), https://www.kiro7.com/2019/05/16/video-prosecutor-seatac-motel-6-used-for-sex-trafficking/.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

its parking lot in recent years" including "homicides, assault, stolen cars, shootings, gang activity" and more.

155. In May 2019, two men were charged with felony sex trafficking in unrelated cases at the Motel 6 on 47th Avenue South; Jordan Jackson trafficked a 14-year-old girl, and Leon Henderson trafficked an adult woman.

156. In April 2018, news articles ran about Plaintiff's trafficker, whom lured young girls into sex trafficking under the guise of being a filmmaker. He was finally sentenced; he had trafficked girls at the Seattle Motel 6s for years, including Plaintiff in 2014 just before he was finally arrested.

157. This sampling of news stories, reviews, and other public information establishes that, at the time Jane Doe was trafficked at the subject properties, G6 Defendants, Jarnail Singh, and SeaTac Hotels, LLC knew or should have known that:

a. There was widespread and ongoing sex trafficking occurring at the G6 branded properties;
b. Sex trafficking was a brand-wide problem for G6 Defendants;
c. G6 franchisees and G6's own motel staff were not taking reasonable steps to identify, intervene, prevent and respond to known or probable sex trafficking occurring at their motel properties and were facilitating sex trafficking and harboring trafficking victims at the branded motel properties; and
d. G6 and its franchisees were earning revenue from rooms rented for sex trafficking by providing venues where widespread and ongoing sex trafficking was occurring.

///

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

158. At all times relevant, including before and at the time Plaintiff was being trafficked for sex at the subject Motel 6s, G6 Defendants, Jarnail Singh, and SeaTac Hotels, LLC were specifically aware that sex trafficking was widespread and ongoing at the subject Motel 6 locations.

159. Internet reviews for the subject Motel 6 locations named herein, which G6 Defendants and SeaTac Hotels, LLC managed, controlled, responded to and monitored, show the pervasiveness of sex trafficking before, during and after Jane Doe was trafficked. Here are just a few examples:

a. Motel 6 on 47th Avenue South:

i. Reviewers refer to the property as "Motel Sex," a "red light district," and "a hotbed of prostitutes." Guests state the property has "druggies everywhere" and is "over-flowing with tweakers." Some guests did not have working phones in their rooms, or staff failed to answer when guests did attempt to report concerns. If they were able to actually reach a staff member, they "did not care at all," "didn't do anything about it," and offered "no intervention." One guest stated, that "management knowingly allows open drug dealing and prostitution to take place on their property." Several female guests were followed, harassed, chased, threatened, and groped by men on the premises.

ii. One reviewer found 13 used condoms in their room and another a box of condoms.

iii. Another reviewer notes that "the place is full of gangbangers, drug dealers, and prostitution. I believe the staff know these



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

activities are going on but do nothing to stop it."

b. Motel 6 Seattle Airport (Pacific Hwy S / 16500 Pacific Hwy S)

i. Review excerpts on the business page include multiple guests complaining of "sketchy" parking-lot activity, drug dealing, and prostitution; example language found in reviews: "Parking lot crawling with hookers and watched 3 drug deals." Source: Yelp business page / user reviews for Motel 6 Seattle Airport (historic reviews include 2012–2014 activity reports)

160. G6 Defendants, Jarnail Singh, and SeaTac Hotels, LLC knew Jane Doe was being trafficked at the locations named herein by the many red flags present during the continued stays over several weeks throughout 2014. Jane Doe's trafficker paid for stays with multiple rooms, and sometimes paid for extended stays on a day-to-day basis. Obvious visible signs of physical abuse were displayed to Defendants on Jane Doe's and her minor friend's body and face. Defendants saw and should have saw a man and woman waiting outside of the room while other men were inside with Jane Doe and other very young girls for short periods of time and people guarding the room door.

161. The calls for service for law enforcement at each of the Motel 6 locations named herein show extensive and constant criminal activity was taking place at these specific locations before, during and after the time Plaintiff was trafficked. These calls for service include but are not limited to multiple calls for suspicious circumstances, drugs, fighting, weapons. prostitution, rape, sex offenses, child molestation, suspicious vehicles, dead bodies, and domestic violence including simple and aggravated assault. These calls for service would have put SeaTac Hotels, LLC, Jarnail Singh, as well as G6 Defendants on notice of the crimes occurring at their



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

properties consistent with sex trafficking.

162. Additionally, the Pacific Highway Motel 6 was not a franchised location - it was directly owned and operated by G6 Defendants through Motel 6 Operating, L.P. At this Pacific Highway Motel 6 property, G6 managers and employees bore firsthand witness to unmistakable signs of the trafficking of and violence to a child—Jane Doe—yet they accommodated, enabled, and at times protected JANE DOE's trafficker.

163. At the 47th Avenue property, G6 inspected the property, audited the property, visited the property regularly, communicated directly with Jarnail Singh about, and had every type of notice of the trafficking ventures, including the one that trafficked JANE DOE, including actual and constructive. The Motel 6 employees were friendly with Jane Doe's traffickers, whom were regulars at the motels. Jane Doe felt helpless and knew she could not tell the employees or ask them for help because they made it clear they knew her trafficker and would not help her.

164. G6 Defendants and SeaTac Hotels, LLC, by and through their officers, directors, employees and/or agents, directly saw Plaintiff Jane Doe at the subject Motel 6s that they owned, operated and/or controlled at issue in this lawsuit. At all times relevant that Defendants saw Plaintiff Jane Doe at the subject Motel 6s, Plaintiff was a minor child. At all times that Defendants saw Plaintiff Jane Doe at the subject Motel 6s, signs that Plaintiff Jane Doe was engaging in commercial sex were also exhibited, known and knowable to Defendants.

///

///

///

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

**Defendants Participated in the Sex Trafficking Venture that Trafficked Jane Doe And Knew and Should Have Known That She Was Forced, Defrauded, and Coerced into Engaging in Commercial Sex at Their Properties.**

165. Under false pretenses, Jane Doe 's trafficker initially fraudulently promised a film career, consensual private interactions, large sums of money and financial stability. She had no idea he was a trafficker. Preying on her and her young friends' vulnerability as a minor, her trafficker and his associate lied to lure them to the Motel 6s to be trafficked. They first represented that they were film producers and looking for local talent to star in a documentary about sex work. The trafficker portrayed the "work" as acting that would earn the young girls a substantial amount of money.

166. In early 2014, Jane Doe's trafficker induced Jane Doe, a child, to sign a "contract" with him that purportedly required her to do as he said until the "project" was completed or risk owing him substantial money. Under the false and fraudulent contract, Jane Doe's traffickers falsely promised her large sums of money.

167. After signing the contract, things quickly changed. Jane Doe 's trafficker became violent, aggressive, and with his associates began controlling her every move. Not only did her trafficker threaten and terrorize her with physical violence, he further threatened to leak nude photographs and videos of her to her family, friends and the public if she did not comply with his demands. The traffickers also coerced Jane Doe by falsely stating that she would get into legal trouble and owe him substantial amounts of money if she did not comply with the illegal "contract" that he induced her to sign. Through force, coercion and fraud, Jane Doe's trafficker forced her to engage in commercial sex repeatedly at the subject Motel 6s, while still a minor,



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

so that he and Defendants could profit and benefit.

168. Egregiously, Jane Doe was also fed drugs throughout the trafficking to further ensure her compliance. She was controlled with abuse, threats, physical force, manipulation, drugs, and coercion. Jane Doe was trapped and was terrified of attempting to escape for fear she would be severely harmed, humiliated, that her nude body would be plastered everywhere, and that she would lose monies falsely promised to her and owe money she could never pay. She was trafficked with other young girls that experienced the same.

169. From approximately March through December 2014, Jane Doe was a minor and a victim of sex trafficking at the following locations:

a. Motel 6, 16500 Pacific Hwy, SeaTac, WA 98188

b. Motel 6, 18900 47th Ave. S., SeaTac, WA 98188

170. Plaintiff's trafficker rotated between these motels consistently and regularly during this time with a short break during the late summer where Plaintiff's trafficker took some of the young girls including children under the age of 18 to other states and back. Her trafficker's associates monitored Plaintiff and the other young girls while her main trafficker was away.

171. Defendants' motels were used by Plaintiff's trafficker for several days to weeks at a time over and over again encountering the same staff while cycling between the two. Motel 6 was Jane Doe's trafficker's motel of choice because the motels were known for trafficking, known for allowing trafficking, and they knew they would let them get away with it.

171. The commonly accepted "red flags" of sex trafficking that Jane Doe's trafficker, the trafficking operation, and Jane Doe exhibited were open and obvious to the staff and management of the subject motels. The staff and management



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

reported the "red flags" of trafficking at their subject locations to the SeaTac Hotels, LLC, Jarnail Singh and G6 Defendants, which directly placed them on knowledge and notice of Jane Doe 's trafficking that was taking place on their owned, managed and controlled properties.

172. While in the presence of the staff at the subject motel locations, Jane Doe's trafficker was physically aggressive and abusive toward her and the other girls. Sounds of her screams and beatings were detectible to persons at the subject motels. The abuse was apparent to the staff at the subject motel locations.

173. Jane Doe's trafficker used the subject locations so often that the staff regularly recognized them. Upon information and belief, Jane Doe's trafficker had been using the subject Motel 6s to traffic young girls for years before he trafficked Plaintiff there.

174. Jane Doe's trafficker held a friendly relationship with the staff at the subject motels, and they were aware of his criminal acts. The staff often allowed traffickers to reserve multiple rooms at the same time to run the trafficking rings for cash payment.

175. The subject motel locations are recognized trafficking hubs and are well known as locations that regularly allow traffickers to use their rooms to traffic women and young girls like Jane Doe. Many survivors have already come forward and shared their stories; some have filed lawsuits.

176. Without a doubt, Motel 6 'left the light' on for Jane Doe's traffickers, allowing them free reign of their properties in exchange for rental payments generated by the repeated rape and flagrant abuses of Jane Doe and other children and young girls at their Motels.

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

177. Each day that Jane Doe was trafficked at these motels, the staff assisted, supported, facilitated and engaged in affirmative acts during their continuous and friendly business relationship with Jane Doe's trafficker. This included without limitation by allowing Jane Doe's trafficker to enjoy privileges and access not afforded to other, legitimate motel guests, due to the increased rental profits generated by Jane Doe's and others' abuse.

178. Jane Doe's trafficker was allowed to openly abuse Jane Doe around the property, be loud, have drugs, pay in cash at random times, use fake or false IDs if he was required to give any, engage in open transactions of money with non-guests, and linger outside motel room doors while children, including in particular, Jane Doe were forced to engage in unlawful sex acts.

179. Defendants participated as active and willing accomplices to sex trafficking Jane Doe and several other children, girls, and women at the properties.

180. Jane Doe's trafficker used the subject motel locations to escort and force her to have sex with numerous buyers daily. She was forced to take every single buyer that requested sexual "services" from a child. Scores of "buyers" would cycle through Jane Doe's motel rooms each day without motel staff intervention of any kind. In fact, Jane Doe's traffickers would set up the commercial sex with buyers using Motel 6s Wi-Fi, and specifically directed buyers to the Motel 6 locations through ads and communications.

181. Meanwhile, minor Jane Doe got little sleep and food during the trafficking, was raped multiple times a day, and was controlled through fear, force, fraud, and coercion including through the use of highly addictive controlled substances designed to eliminate her ability to resist the atrocities taking place.

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

182. Needless to say, Jane Doe's traffickers confiscated all the money from the subject commercial sex, and did not pay Jane Doe a dime. They did, however, routinely use the monies received to pay Defendants for the use of the in which the trafficking occurred with no questions asked. Each day, Jane Doe and other young girls would loiter outside the rooms in motel common spaces, until they were moved in and out of various rooms for the convenience of the "buyers". Defendants did not even attempt to hide the nature of these transactions, which would have been noticeable and identifiable to anyone watching or paying any attention, and certainly would have been easily recognized by hospitality industry staff employed by Defendants.

183. The subject motel rooms that Jane Doe was trafficked at had excessive amounts of condoms, sex paraphernalia and drugs, which were visible to motel staff when cleaning the rooms.

184. The subject motel locations where Jane Doe was harbored during her trafficking also had visible and olfactory signs of illegal drug use and sales.

185. Jane Doe's trafficker gave her drugs. The apparent signs of forced drug use of a child would have also placed the staff at the motel locations on notice of Jane Doe's trafficking.

186. As a direct and proximate result of being trafficked for sex when she was a child , Jane Doe sustained serious and permanent injuries and damages, which have impacted and will continue to impact her life on a daily basis and affect her for the rest of her life.

187. Defendants engaged in overt actions which were the direct and unimpeded causes of Jane Doe's trafficking at their motels and resulting injuries there. Defendants gave Jane Doe's traffickers the means and place to traffic Plaintiff



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

and other young girls, and benefitted from and facilitated their trafficking activities.

188. At the time Plaintiff was being trafficked at the subject Motel 6 locations, Defendants' managers, officers, directors, employees and agents harbored criminal traffickers knowing and in reckless disregard of the fact that Plaintiff, a minor and child, would be repeatedly raped and forced to engage in commercial sex acts.

189. At the time Plaintiff was being trafficked at the subject Motel 6 locations, Defendants and their managers, officers, directors, employees and agents benefited financially from participating in a venture that was recruiting, enticing, harboring, providing, obtaining, advertising, maintaining, patronizing and soliciting minors to engage in commercial sex acts, while knowing and in reckless disregard of the fact that Plaintiff, a minor and child, would be caused to engage in commercial sex acts.

190. While the Defendants' owners, managers, officers, directors, and/or employees' conduct described herein rises to the level of criminal conduct punishable under Title 18 of the United States code section 1591, by a minimum of ten years in prison to life in prison, upon information and belief, Defendants have continued to roam free without consequence despite their crimes.

191. Each of the following "red flags" and/or signs of knowledge took place in the presence and observation of the subject motel staff:

- Jane Doe's traffickers were friendly with employees at the motels and openly engaged in criminal conduct around the properties;
- Jane Doe's traffickers paid for motel rooms in cash;
- Jane Doe's traffickers rented motel rooms for days at a time and would put young girls in the rooms, encountering the same staff



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

repeatedly;

- Jane Doe would come and go from the property, and sometimes be taken from one room to another or have to wait outside wearing revealing and inappropriate clothing for a minor;
- The motel rooms were occupied by people who did not book rooms and visited constantly by men who were not authorized guests;
- Loud arguments, fighting and yelling took place at the subject motels in and out of rooms;
- Jane Doe's trafficker grabbed and forcibly manhandled her at the subject motel locations;
- There were individuals frequently entering and leaving the rooms in which Jane Doe was held;
- There were excessive amounts of sex paraphernalia in the room(s) in which Jane Doe was held, including condoms and lubricant which were visible to cleaning staff when they changed rooms and/or when the rooms were cleaned;
- The motel staff stared at Jane Doe in a judgmental manner; they were friendly with her trafficker and his associates and rude and unkind to the girls being victimized;
- Jane Doe's motel room had men lingering around;
- Jane Doe showed signs of fear, anxiety, tension, submission and nervousness;
- Jane Doe showed signs of physical abuse, restraint, and confinement;
- Jane Doe was a minor;



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

- Jane Doe showed signs of emotional abuse and was treated in a demeaning way;
- Jane Doe showed signs of malnourishment, poor hygiene, fatigue, sleep deprivation, injuries and unusual behavior;
- Jane Doe avoided eye contact and avoided interacting with others;
- Jane Doe had no control over or possession of money that would have been visible to staff; she was not paying for things or rooms;
- Jane Doe appeared distressed or injured due to being beaten and raped multiple times;
- Jane Doe appeared in provocative clothing and shoes that did not match the weather;
- Jane Doe was forced to keep her head down and not make eye contact with anyone at the motels;
- Jane Doe's trafficker controlled her and other girls' movements, decisions and conversations;
- Signs of physical, mental and emotional abuse were clearly visible to the motel staff that saw her return with traffickers and saw her and other young girls being told what to do and with whom.

192. These red flags were open and obvious to anyone working at the subject motel locations and anyone inspecting the location.

193. Jane Doe's trafficking had profound effects on her, consistent with "red flags" of trafficking that are well recognized in the hospitality industry. These "red flags" include the visible effects on her appearance, demeanor, movements throughout the motel, her interactions with her trafficker, hotel staff, and others. Observing these effects provided Defendants with notice that Jane Doe was being


SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

continuously subjected to coercion, control, exploitation and commercial sex.

194. At all relevant times, these "red flags" described herein of the fact that Jane Doe was being trafficked for sex were open and obvious to Defendants by and through the staff and management of the subject motels, and each person that inspected it and were receiving data about it. Upon information and belief, the staff and management reported the "red flags" of trafficking at the subject locations while Plaintiff was being trafficked there to the SeaTac Hotels, LLC, Jarnail Singh, and G6 Defendants directly placing them on knowledge and notice of Jane Doe's trafficking which was taking place on their owned, managed and/or controlled properties.

195. The repetition of these stays turned the trafficker and victim into "regulars," ensuring that their presence and the accompanying red flags were known to staff. This geographic footprint reflects a deliberate choice by the venture to operate where management and security were either indifferent or actively complicit.

196. Plaintiff's trafficker, "David Delay," would use the same named locations so often that she started to quickly recognize staff. The front desk and other staff would consistently see Plaintiff with her trafficker and would have realized they kept returning and exhibiting red flags of trafficking

197. Plaintiff recalls a specific interaction with a housekeeping staff member she believes was of Mexican descent. This employee observed Plaintiff's condition closely enough to ask her "if she was using condoms and was doing OK?" She made clear that she knew Plaintiff, a child, was engaging in sex for money.

198. A former night receptionist at the Motel 6 on 47th Avenue (one of the locations where Plaintiff was trafficked) provided a statement confirming she saw prostitution occurring, recognized "regulars" every weekend, saw girls under the influence, and observed them going into rooms with "tricks." The witness would call



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

police often for fights, domestic violence, and noise. One long-term guest would introduce women as his "hoe." She never received any type of training for trafficking. Managers never informally trained her on this either. There were no policies or procedures for reporting trafficking

199. Plaintiff noted that the staff were sometimes "rude" to her because "they did not like what they were doing there," implying they were aware of the illicit activity. These employees witnessed the "steady stream of men" arriving at all hours, cash transactions, and "terrified women who never appeared free to leave". Despite this, the employees were nice to the traffickers and continued to give them rooms in exchange for money.

200. During this time Plaintiff was under the control of her trafficker and endured threats from him that if she did not comply, he would send nude photos to her family and friends.

201. The environment was marked by extreme violence. In one instance, a buyer threw a bottle at and hit Plaintiff's head. This assault left a permanent scar on the left side of her head, above her ear. Blood was everywhere. This disfigurement was an "observable physical indicator" of abuse that staff would have seen during her frequent face-to-face check-ins and interactions with Motel 6 staff.

**SeaTac Hotels, LLC and Jarnail Singh Assisted, Supported and Facilitated the Trafficking of Jane Doe for Sex.**

202. SeaTac Hotels, LLC and Jarnail Singh had both actual and constructive knowledge of the trafficking of Jane Doe at the 47th Avenue Motel 6 they owned and operated because the owner and/or managers were constantly at the property and its owner, managers and employees directly witnessed the traffickers, Plaintiff, criminal conduct, the red flags of Plaintiff being trafficked, other young girls and children



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

being trafficked at the same time; women being forced and coerced into engaging in commercial sex, girls on drugs and unable to consent; buyers coming and going regularly; and severe abuse and violence. The trafficking was the direct result of SeaTac Hotels, LLC and Jarnail Singh facilitating her trafficking at the subject locations.

203. SeaTac Hotels, LLC, Jarnail Singh and G6 Defendants are responsible for the acts, omissions, and knowledge of all employees of the respective subject Motel 6 locations that each owned and/or controlled when operating the motels because these acts and omissions were committed in the course and scope of employment and every employee acted as an agent of Defendants. SeaTac Hotels, LLC, Jarnail Singh and G6 Defendants ratified the wrongful acts and omissions of its employees that participated, facilitated, supported, and assisted Jane Doe's traffickers in trafficking her for sex because Defendants knew that it was happening; knew that it was likely happening; knew the employees, managers and owners were allowing it to happen; knew the employees were not trained and/or not following trainings, policies and/or procedures to stop it; and knew that Defendants were benefitting from their employees', managers', and owners' participation in sex trafficking ventures through room rentals for the same.

204. Despite having actual and constructive knowledge of widespread and ongoing sex trafficking at the subject Motel 6 on 47th Ave., SeaTac Hotels, LLC and Jarnail Singh continued renting rooms to traffickers there, including the rooms used to sexually exploit Jane Doe and other victims.

205. SeaTac Hotels, LLC and Jarnail Singh knew or was willfully blind to the fact that Jane Doe was being trafficked and, despite this, benefited from continued association with her trafficker by providing them with a venue in the form



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

of hotel rooms and related services with no questions asked, in order to harbor and facilitate Jane Doe 's sexual exploitation.

206. Defendants also facilitated widespread trafficking at their motel locations, including the trafficking of Jane Doe in ways including:

a. Allowing unreasonable, negligent and inadequate practices for hiring, training, supervising, managing and disciplining front line staff and on-site staff regarding issues related to human trafficking;

b. Inadequate and inadequately enforced sex trafficking notice and training for motel staff;

c. Choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, laws, and/or applicable franchisor policies and procedures; and

d. Implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate openly and conspicuously without concern for detection or interference of any kind by the motel staff and owners.

**G6 Defendants Facilitated the Trafficking of Jane Doe**

207. During the times Jane Doe was trafficked at the subject properties, G6 Defendants participated directly in aspects of the operation of those subject motels, including the one it owned the entire time—the Pacific Highway Motel 6 by and through Motel 6 Operating, L.P.—and the one that was franchised—the 47th Avenue Motel 6— such that it influenced whether and to what extent trafficking occurred at the motels, including but not limited to the trafficking of Jane Doe, as follows:



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

a. G6 Defendants assumed responsibility and control over the human trafficking response of their subject motel properties, including design and implementation of practices to prevent trafficking, safety, and security procedures, employee, and franchisee education, training and response, partnership with external organizations, and advocacy;

b. G6 Defendants became directly informed of forced prostitution, forced and coerced commercial sex, and sex trafficking at the subject Motel 6s but chose not to take feasible and known actions to stop it;

c. G6 Defendants retained control over when its branded hotels would share information with law enforcement and when law enforcement would be contacted about suspected criminal activity in their branded motel locations;

d. G6 Defendants retained control over determining which motels needed additional training, security, and funds for the same, or other resources to address the likelihood of and fact of trafficking and other related criminal activity occurring;

e. G6 Defendants retained control to terminate hotel staff and/or a franchising agreement based on crime and the response to human trafficking;

f. G6 Defendants determined whether the training is provided, when it is provided, the content of the training, how the training is delivered, who receives it, and the consequences of someone not participating or failing to follow such training; and



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

g. G6 Defendants retained control over drafting, supervision, overseeing, and enforcement policies and procedures for housekeeping services, front desk services, operations and security at the subject motel locations, including how often rooms must be entered, how to respond to guest refusals of entry into rooms, how to view cameras, what actions to take to deter conduct, and steps to monitor guest safety issues through housekeeping services, front desk staff, operations and security.

208. G6 was made aware of the fact that its cash and lax policies were promoting sex trafficking at the subject Motel 6s but chose not to implement safer parking policies, identification policies, guest policies, security policies, and human trafficking response rules. It even knowingly allowed violations of its rules to assist, facilitate and support trafficking, which brought a constant income stream to the subject motels.

209. Upon information and belief, during the time Plaintiff was trafficked at the subject Motels and before, room rentals for trafficking made up a large majority of the income derived at the subject Motel 6s, and upon information and belief, G6 Defendants knew and should have known that room rentals for trafficking made up a large majority of the income derived at the subject Motel 6s.

210. As a direct and proximate result of these egregious practices on the part of the G6 Defendants, Jane Doe and numerous victims of sex trafficking and exploitation have been permanently injured and damaged physically, emotionally, psychologically, and financially. G6 Defendants, together with SeaTac Hotels, LLC and Jarnail Singh, provided the venues to Jane Doe's trafficker and his associates, and aided and abetted his trafficking of her and other young girls. G6 Defendants



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

have been displaying the same level of participation in the sex trafficking industry for decades. It must stop. They must be held accountable.

**Defendants are Jointly Responsible for the Trafficking of Jane Doe**

211. G6 Defendants, Jarnail Singh, and SeaTac Hotels, LLC were participants in a joint venture with each other, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

212. Upon information and belief, the operation of the subject Motel 6 locations were part of a single unified operation by G6 Defendants. Upon information and belief, the subject Motel 6 locations shared common parent companies, were subject to joint control, and operated as an integrated enterprise and/or as alter-egos. Upon information and belief, G6 Defendants acted jointly to own, operate, control, manage, and supervise the subject Motel 6 locations. As an integrated enterprise and/or joint venture, G6 Defendants, Jarnail Singh and SeaTac Hotels, LLC were separately and jointly responsible for compliance with all applicable laws.

**Defendants are Jointly and Severally Liable for Plaintiffs Damages**

213. The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the indivisible injuries and damages to Jane Doe claimed herein.

214. Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Jane Doe for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

///

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

215. Under a negligence theory, Defendants are jointly and severally liable for all damages that a jury awards to Jane Doe for past and future losses she suffered as a proximate result of the injuries they caused her.

**CAUSES OF ACTION AGAINST ALL DEFENDANTS**

**Sex Trafficking under 18 U.S.C. § 1595**

**(Jane Doe Against All Defendants)**

**Cause of Action 1: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a)**

**(All Defendants)**

216. Jane Doe realleges and incorporates the allegations in paragraphs 1 through 215 as if fully set forth here.

217. Jane Doe is a victim of sex trafficking within the meaning of §1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

218. Plaintiff was a minor child at the time of the sex trafficking at Defendants' Motels.

219. Defendants are perpetrators within the meaning of 18 U.S.C §1595(a) because they:

a. Violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, they harbored individuals, including Plaintiff, knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at their respective motel properties;

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

b. Violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, they harbored individuals, including Plaintiff, knowing or in reckless disregard of the fact that the victims, including minors, would be forced to engage in commercial sex acts while at their respective motel properties; and

c. Violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, they knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at their respective motel locations.

220. Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe to suffer substantial physical and psychological injuries and other damages as a direct and proximate result of being trafficked and sexually exploited at the Defendants' motel locations.

**Cause of Action 2: Beneficiary Liability under §1595 (a) of the TVPRA (all Defendants)**

221. Jane Doe realleges and incorporates the allegations in Paragraphs 1 through 220 as if fully set forth herein.

222. Jane Doe is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

223. Through acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and traffickers, including Jane Doe's trafficker and his associates, despite the fact that each Defendant knew or should have known that this trafficker was engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2) at Defendants' properties, including the subject locations alleged in this Complaint.

224. As more specifically alleged above, G6 Defendants, Jarnail Singh and SeaTac Hotels, LLC took part in a common undertaking and enterprise involving risk and potential profits, and here, actual profits resulted. G6 Defendants', Jarnail Singh's and SeaTac Hotels, LLC's employees had a direct association with the trafficker and knowingly facilitated, supported and assisted the trafficker, which, as shown more thoroughly in the incorporated allegations above, showed a continuous business relationship between the trafficker and Defendants such that the pattern of conduct appears to be a tacit agreement between them. Thus, Defendants are liable as a beneficiary under 18 U.S.C §1595(a).

225. Through the acts and omissions described throughout this Complaint. Defendants received a financial benefit from participating in a venture with each other in the operations of their respective motel locations even though Defendants knew or should have known that this venture was violating 18 U.S.C §§ 1591(a) and 1595(a).

226. Violations of 18 U.S.C §1595(a) by Defendants as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' Motel 6 locations.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

**Cause of Action 3: Vicarious Liability for TVPRA Violations**

**(G6 Defendants)**

227. Jane Doe realleges and incorporates the allegations in Paragraphs 1 through 226.

228. Under the TVPRA and the federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture.

229. Under the TVPRA and the federal common law, an entity is vicariously liable for the acts and omissions of its alter-egos.

230. SeaTac Hotels, LLC and Jarnail Singh acted as the actual agents of G6 Defendants, within the scope of their agency, when operating their respective motel location and in committing the wrongful acts and inactions alleged herein.

231. Through the wrongful acts and omissions described throughout this Complaint, G6 Defendants exercised or retained the right to exercise systematic, pervasive, and day-to-day control over the means and methods used by their franchisees to operate their respective motel properties; and as to the properties they directly owned and controlled, they did the same.

232. G6 Defendants are vicariously liable for the TVPRA violations of its franchisee, SeaTac Hotels, LLC, of Jarnail Singh, and the subagents of each.

233. Additionally, on information and belief, each of the G6 Defendants participated in a joint venture operating the subject Motel 6 locations when it owned, operated, and/or controlled each property during the trafficking period. They each had highly integrated operations at the motels, shared revenue and profits generated from the motels, and exercised mutual control over the ventures at the motels. They functioned as a single integrated entity and/or as alter-egos of one another and are



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

therefore each directly and proximately liable for the harms and damages caused to Jane Doe as a result.

**JOINT AND SEVERAL LIABILITY**

234. "Joint and several liability 'applies when there has been a judgment against multiple defendants."[54] If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the Plaintiff recovers only once for the full amount.[55]

235. Federal and Washington law allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, without regard to her proportion of fault and even if the concurrent negligence of others contributed to the incident.[56]

236. Plaintiff alleges Defendants, and each of them, should be held joint and severally liable to Plaintiff for the totality of her injuries and damages alleged herein.

**DAMAGES**

237. Defendants' wrongful acts and omissions described above, individually and collectively, caused Plaintiff to sustain legal damages.

238. Plaintiff did suffer the following injuries as a direct and proximate result of Defendants', and each of their, wrongful actions and inactions alleged herein, and as such Plaintiff is entitled to be compensated for past and future personal injuries, non-economic damages, and economic damages, see, e.g., 18 U.S.C. §§ 1593, 1595, including:

a. actual damages;

---

[54] *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994).

[55] See 735 ILCS 5/2-1117; see Restatement (Second) of Torts § 875 (1977); *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

[56] *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979) (citations omitted); *Manganiello v. City of New York*, No. 07 Civ. 3644, 2008 WL 2358922 (S.D.N.Y. June 10, 2008), affirmed, 612 F.3d 149 (2nd Cir. 2010).



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

b. direct damages;

c. incidental and consequential damages;

d. necessary medical expenses;

e. life care expenses;

f. physical pain and suffering;

g. physical impairment;

h. disfigurement and scars;

i. mental anguish and emotional distress damages;

j. psychological injuries and damages;

k. restitution;

l. unjust enrichment; and

m. disgorgement of profits.

239. Plaintiff is entitled to pre- and post-judgment interest at the maximum legal rates.

## PUNITIVE DAMAGES

240. Plaintiff is entitled to punitive damages under the applicable statutes and common law against Defendants, and each of them, for each and every cause of action alleged herein, as a result of Defendants' outrageous, wanton, willful, and malicious conduct underlying Jane Doe's claims. See *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).

## COSTS AND ATTORNEY FEES

241. Plaintiff is entitled to recover costs and reasonable, necessary, or customary attorneys' fees from Defendants under common law and applicable statutes. See 18 U.S.C. § 1595(a).

///



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

242. All conditions precedent to Plaintiff's recovery of its costs and attorneys' fees have occurred or will occur prior to entry of judgment in this suit.

## JURY DEMAND

243. Plaintiff requests a jury trial in this action.

## PRAYER

244. For these reasons, Plaintiff respectfully prays that this case be set for trial before a jury, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants jointly and severally, for:

a. all economic damages to which she is entitled;
b. all actual damages to which she is entitled;
c. all incidental and consequential damages to which she is entitled;
d. all mental anguish and emotional distress damages to which she is entitled;
e. all psychological damages to which she is entitled;
f. all restitution damages to which she is entitled;
g. all disgorgement of profits to which she is entitled;
h. all unjust enrichment damages to which she is entitled;
i. exemplary, treble, and/or punitive damages;
j. attorneys' fees and costs of suit;
k. pre-judgment and post-judgment interest at the highest rate allowed by law; and
l. all other relief to which she is entitled in law or in equity.

SINGLETON SCHREIBER

Dated: May 18, 2026

*/s/ Alexandria Drake*

Alexandria Drake (WA 45188)
Meagan Verschueren (CA 313117)
*Pro Hac Vice applicant*



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

Katie Llamas (CA 303983)
*Pro Hac Vice applicant*
Alexia Palacios-Peters (CA 263576)
*Pro Hac Vice applicant*

Attorneys for Plaintiff JANE DOE



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473